# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 31, 2022
Lyle W. Cayce
Clerk

No. 20-11232

United States of America,

*Plaintiff—Appellee,*

versus

Mayeli Molina,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Northern District of Texas
No. 3:17-CR-341

Before Smith, Duncan, and Oldham, *Circuit Judges*.

Per Curiam:*

Mayeli Molina was convicted of conspiring to distribute over 500 grams of methamphetamine ("meth") and sentenced to 292 months' imprisonment. She appeals her conviction and sentence.

Regarding her conviction, Molina complains that, although the government designated several of its lay witnesses as experts, the trial court took

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

Case: 20-11232   Document: 00516481295   Page: 2   Date Filed: 09/22/2022
Case 3:17-cr-00341-B   Document 1013   Filed 09/22/22   Page 2 of 10   PageID 5129

No. 20-11232

no steps to prevent jury confusion. Regarding her sentence, Molina challenges both the district court's factual findings and its stated reasons. Molina contends that the court did not make findings, but if it did, the ones it made are clearly erroneous. And she maintains that the court sentenced her partially as punishment for exercising her constitutional right to a jury trial. We affirm.

I.

Federal investigators first became aware of Molina when they observed text messages between her and another individual whose line had been tapped. Those communications made it appear that Molina had picked up a kilogram of meth on her uncle's behalf, providing money in exchange. The authorities began investigating Molina as a potential participant in a drug-trafficking conspiracy.

Evidence of Molina's involvement gradually piled up. A series of text messages and financial transfers suggested that she had arranged and paid for drug transactions. A search of her house revealed scales and baggies. A cooperating witness confirmed Molina's involvement in the pickup that had first alerted the authorities. And a second cooperating witness testified to selling several kilograms of meth to Molina on multiple occasions.

Molina was indicted as part of an eighteen-person operation to import meth from Mexico into the United States. Molina's co-defendants pleaded guilty. The government presented testimony from its two cooperating witnesses and several government agents, all of whom had been personally involved in the investigation. The jury instructions listed all but one of those agents as expert witnesses.

Molina testified, laying the blame primarily on her uncle. Because he is old and infirm, she explained, Molina often allowed her uncle to use her phone and ran errands for him. She admitted to participating in the transac-

Case: 20-11232   Document: 00516481295   Page: 3   Date Filed: 09/22/2022
Case 3:17-cr-00341-B   Document 1013   Filed 09/22/22   Page 3 of 10   PageID 5130

No. 20-11232

tion with the first cooperating witness but claimed that, because the bags were opaque, she had not realized they contained drugs and money. As for the second cooperating witness, she claimed that her uncle sent all the incriminating text messages. The jury convicted Molina of conspiracy to distribute at least 500 grams of meth.

In calculating the base offense level, the presentence investigation report ("PSR") attributed thirteen kilograms of "ice" (that is, high-purity) meth to Molina, despite the fact that no meth in Molina's possession had ever been recovered. Molina objected, averring that she should be held responsible for only six kilograms of meth and that none of it should be counted as ice. The district court overruled both objections and adopted the PSR. The base offense level, with a two-point enhancement because the meth was imported, resulted in a guidelines sentencing range of 292 to 365 months.

Molina requested a downward departure, pointing to her lack of criminal history and relatively minor role in the conspiracy. The district court declined to indulge. The court acknowledged that it had given downward departures in similar cases but expressed frustration with Molina's decision not to accept responsibility and instead "insist[ ] on going to trial." The court was particularly frustrated with Molina's apparently false testimony on her own behalf. The court sentenced Molina to 292 months' imprisonment, the low end of the guidelines range.

On appeal, Molina challenges her conviction and sentence. She maintains that the trial court erred in three ways. First, it allowed the government to present dual-purpose fact and expert witnesses without appropriate safeguards. Second, it failed to make sufficient factfindings regarding the quantity and quality of meth attributable to her, and if it did make those findings, they were clearly erroneous. Third, Molina says that her sentence, while not substantively unreasonable, was imposed as punishment for her decision to

No. 20-11232

exercise her Sixth Amendment right to stand trial.

II.

Regarding the conviction, Molina says that, although the government presented most of its witnesses as both fact and expert witnesses, the district court failed to take any protective steps to prevent that dual role from confusing the jury. Molina did not object, so, as she concedes, we review only for plain error. We conclude that the plain-error standard has not been satisfied.

A.

To show plain error, Molina must show that (1) there was error, (2) the error was obvious, and (3) the error affected her substantial rights. *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016). Even if she makes that showing, this court will correct the error only if, in our discretion, we determine that it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Ibid.* (quotation omitted).

B.

We pretermit a discussion of the first two prongs because, even assuming error that was obvious, such assumed error did not harm Molina's substantial rights, so this appeal fails on the third prong of plain-error review.

"Error is prejudicial if there is a reasonable probability that the result of the proceedings would have been different but for the error." *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 363 (5th Cir. 2010). It is not prejudicial if the remaining evidence of guilt, after errors are excised, was strong enough to make a guilty verdict the much more likely outcome. *See, e.g.*, *United States v. Haines*, 803 F.3d 713, 732–33 (5th Cir. 2015); *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 367 (5th Cir. 2010).

Molina could have been convicted even if the testimony of the six witnesses had been excluded. That would still leave the police officer who

4

searched Molina's house and phone, finding scales, baggies, and receipts for large transfers of money to Mexico. More importantly, it would also leave the two witnesses who testified that they personally transacted in meth with Molina. Those witnesses had an obvious self-interest in cooperating with the authorities, but their testimony was supported with documented communications. Excluding the dual-use witnesses would also leave Molina's sometimes-unconvincing testimony in her own defense.

And fortunately for the government, it relied very little on the witnesses' expertise. Instead, the claimed error stemmed from the designation of the witnesses as experts in pleadings, which was passed on in the jury instructions. Even if those instructions might have confused the jury or given the witnesses an unwarranted aura, *see Haines*, 803 F.3d at 730–31, the effect would have been slight—the instructions stressed that the jury did not have to accept expert opinions and "should judge such testimony like any other testimony." It strains credulity to maintain the verdict would have been different but for that instruction. Thus, any error was harmless. Because Molina did not object and give the district court a chance to resolve the issue, her challenge on appeal fails.

### III.

Molina's next challenge is to the PSR, which the district court adopted. Molina presents three theories regarding that adoption. First, she says, the court did not make explicit findings regarding the amount of meth attributable to her. Second, the court clearly erred with regard to the quantity of the meth. Third, it clearly erred with regard to the meth's quality.

We disagree with all three theories. The trial court *did* make findings by rejecting Molina's objections and adopting the PSR. And those findings are supported by sufficient evidence to make them plausible in light of the record as a whole.

No. 20-11232

A.

Molina timely objected on this issue. But "the quantity of drugs involved in an offense is a factual determination" and thus is reviewed only for clear error. *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998). Thus, this court must affirm if the decision is "plausible in light of the record as a whole." *Ibid.* (quotation omitted). Moreover, factual findings in support of a sentence need be supported only by a preponderance of the evidence, with the burden on the government. *See United States v. Betancourt*, 422 F.3d 240, 247 (5th Cir. 2005). If the district court failed to find relevant facts in support of a sentence, remand for further proceedings is appropriate. *See, e.g.*, *United States v. Carreon*, 11 F.3d 1225, 1228 (5th Cir. 1994).

B.

The district court made sufficiently explicit findings about the amount and quality of the meth attributable to her. The PSR concluded that Molina was accountable for thirteen kilograms of ice. Molina objected to both the amount and the characterization as ice, and the district court overruled both objections and adopted the PSR. A district court may make findings of fact by adopting the PSR even without "a catechismic regurgitation of each fact determined." *United States v. Rodriguez-Rodriguez*, 388 F.3d 466, 468 n.8 (5th Cir. 2004) (per curiam) (quotation omitted). Such a formality is particularly unnecessary after the court has rejected challenges to the PSR concerning the precise facts in dispute. Thus, the court found that Molina was accountable for thirteen kilograms of ice.

Molina's contrary position rests on *Carreon* and an unpublished decision, *United States v. Ramos*, 545 F. App'x 301, 309 (5th Cir. 2013) (per curiam). But remand in *Carreon* was warranted by special circumstances: This court was "unable to determine how the district court resolved the[ ] issues"—the district court's rejection of one portion of the PSR made it

Case: 20-11232    Document: 00516481295    Page: 7    Date Filed: 09/22/2022
Case 3:17-cr-00341-B   Document 1013   Filed 09/22/22   Page 7 of 10   PageID 5134

No. 20-11232

difficult to see how another portion could still be right. *Carreon*, 11 F.3d at 1231. There is no similar unclarity in this case. *Ramos*, however, could be read to require explicit factfindings regardless of circumstance. *See Ramos*, 545 F. App'x at 308–09. But that case is not binding, and insofar as *Ramos* requires district courts verbally to regurgitate factual findings of the PSR, even after specifically rejecting objections to those same findings, we decline to follow it as contrary to *Rodriguez-Rodriguez*. Molina's first theory challenging the district court's adoption of the PSR fails.

Turning to Molina's second theory, the finding that Molina was accountable for thirteen kilograms of meth was not clearly erroneous. No meth belonging to Molina was seized in this case, but drug quantities may be inferred as long as the evidence the district court relies on has "sufficient indicia of reliability to support its probable accuracy." *Betancourt*, 422 F.3d at 247 (quotation omitted). That bar can be cleared by, among other things, testimony of a co-conspirator. *United States v. Arayatanon*, 980 F.3d 444, 451 (5th Cir. 2020).

Both cooperating witnesses testified to selling meth to Molina. The first testified to a kilogram, and the second testified that he had sold her several kilograms at a time more than three times. Molina attacks the second witness's credibility based on (minor) inconsistencies and the witness's drug use. But there is also hard evidence linking Molina to the transactions, including text messages and wire transfers to Mexico for roughly the wholesale value of a kilogram of meth. In light of that evidence, the district court's acceptance of the thirteen-kilogram estimate easily crosses the threshold of plausibility.

As for Molina's third theory, the finding that Molina's meth qualified as ice was also not clearly erroneous. Ice is defined as meth that is "at least 80% purity." U.S. Sent'g Guidelines Manual § 2D1.1(c) n.(C)

Case: 20-11232   Document: 00516481295   Page: 8   Date Filed: 09/22/2022
Case 3:17-cr-00341-B   Document 1013   Filed 09/22/22   Page 8 of 10   PageID 5135

No. 20-11232

(U.S. S‍ent'g C‍omm'n 2021). The district court cannot assume that a particular quantity of meth clears the bar, but it can infer that unrecovered drugs have purity levels similar to those that are tested. *See, e.g.*, *United States v. Rodriguez*, 666 F.3d 944, 947 (5th Cir. 2012).

Meth recovered from the second cooperating witnesses was tested and proved to be ice, along with meth believed to trace back to the first cooperating witness. The second cooperating witness also provided subjective descriptions of the meth he imported and cooked, describing it as "crystal." Molina points out that no meth was ever seized from her, meaning that attributing a purity level to her requires an inferential step beyond just assuming that all drugs belonging to one person were similar in purity. *See, e.g.*, *Rodriguez*, 666 F.3d at 947; *United States v. Dinh*, 920 F.3d 307, 313 (5th Cir. 2019). But such an inference is justified where, as here, the meth was seized from the same co-conspirators who supplied the defendant. The finding regarding the quality of meth attributable to Molina was not error.

IV.

Molina's final challenge centers on the trial judge's stated reasoning for sentencing Molina to 292 months' imprisonment. That sentence was at the low end of the guideline range proposed by the PSR, and Molina does not challenge its substantive reasonableness. Instead, she points to various statements made by the judge and contends that the judge sought to punish Molina for exercising her Sixth Amendment right to stand trial. We conclude that the judge's remarks, considered in proper context, reveal no such intention, so we reject Molina's challenge.

A.

The standard of review is unclear. Molina asks for *de novo* review, while the government asks for plain error. There is an unpublished decision applying plain-error review in partially analogous circumstances. *See United*

Case: 20-11232 Document: 00516481295 Page: 9 Date Filed: 09/22/2022
Case 3:17-cr-00341-B Document 1013 Filed 09/22/22 Page 9 of 10 PageID 5136

No. 20-11232

*States v. Guy*, 633 F. App'x 851, 855 (5th Cir. 2015) (per curiam). But a subsequent published decision noted that the issue was still open. *See United States v. Gozes-Wagner*, 977 F.3d 323, 335 n.7 (5th Cir. 2020). We confront the question here.

We conclude that *de novo* review is appropriate. A court "by definition abuses its discretion when it makes an error of law." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008) (per curiam) (quotation omitted). To punish a defendant for exercising her trial rights would be a constitutional violation, *see Gozes-Wagner*, 977 F.3d at 334–35; *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978), making it an error of law. Sentences are within a trial court's discretion, but reliance on an impermissible factor is a *per se* abuse of discretion, *see, e.g.*, *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (en banc), further indicating that *de novo* review is appropriate.

Moreover, plain error is premised on a defendant's failure to object. *See Puckett*, 556 U.S. at 134. Though there might be room for objections during the sentencing hearing, *see Gozes-Wagner*, 977 F.3d at 335 n.7, the court's final explanation of a sentence is not to be interrupted, and it ends the proceedings. A defendant like Molina would thus have no opportunity to object to comments made for the first time at that stage. Plain error would be legally and practically inaposite to review legal errors committed by a district judge while announcing a sentence, so we apply *de novo* review.

B.

Although some of the district court's statements raise eyebrows when read out of context, we conclude the court did not err. The judge said that if Molina had "pled to this," the judge would have "look[ed] at this far differently." She complained that Molina "sat through a full proffer . . . and . . . still wouldn't take [a sentence of] four or five years. And . . . then [she] insisted on going to trial." Molina also points out that her co-conspirators

Case: 20-11232   Document: 00516481295   Page: 10   Date Filed: 09/22/2022
Case 3:17-cr-00341-B   Document 1013   Filed 09/22/22   Page 10 of 10   PageID 5137

No. 20-11232

typically received lighter sentences,[1] and the judge noted that she "ha[d] gone way down" from the guidelines range in analogous cases.

But "[o]ne stray comment does not create error when it can be understood in the context of a lengthy sentencing hearing," *Gozes-Wagner*, 977 F.3d at 340 n.12, and we read the district judge's overall point as innocuous. "[T]he key for [her]" was "the testimony at trial," and specifically the fact that Molina provided some of it. Molina's willingness to perjure herself demonstrated dishonesty and lack of contrition. The judge also referred to "all the evidence [that] came out at trial." It is not constitutionally problematic that "in the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged." *Alabama v. Smith*, 490 U.S. 794, 801 (1989). With her fuller understanding of Molina, the judge saw her to be someone who "felt [she was] smarter than everybody else here."

Thus, in the district court's understanding, Molina was someone who thought she could outsmart the system and did not mind lying to do so. Her willingness to go to trial rather than plead was evidence of that tendency, but the decision backfired because it allowed so much evidence of Molina's true self to be presented. We have no occasion to question that understanding; we relate it only to explain our inference that the district court did not treat Molina's decision to stand trial as a discrete offense. Because the district court did not punish Molina for exercising her trial right, we reject this challenge to her sentence.[2]

AFFIRMED.

---

[1] That point has limited relevance, however, because "a defendant who cooperates with the Government is not similarly situated to one who refuses to do so." *Gozes-Wagner*, 977 F.3d at 337.

[2] Because we do not remand for resentencing, we need not consider Molina's request that the case be reassigned to a different judge.